IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LIZZETTA MCCONNELL, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CIVIL ACTION 16-0002-WS-N |
| | ) |
| UNIVERSITY OF ALABAMA | ) |
| HEALTHCARE SYSTEMS, | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

This matter is before the Court on the defendant's motion to dismiss or, in the alternative, motion for more definite statement. (Doc. 19). The parties have filed briefs in support of their respective positions, (Docs. 19, 24, 25), and the motions are ripe for resolution. After careful consideration, the Court concludes that the motion to dismiss is due to be granted in part and denied in part and that the motion for more definite statement is due to be denied.

## BACKGROUND

According to the amended complaint, (Doc. 18), the plaintiff, an African-American, was employed by the defendant as a medical assistant. The amended complaint addresses events occurring between May and December 2014. The plaintiff's workload was double that of her white counterpart, and her time (arrival, departure and breaks) was far more scrutinized than that of any white employee in her department. Two doctors, each on two occasions, berated the plaintiff in front of staff and others, calling her stupid and incompetent. After the plaintiff reported these incidents to her supervisor and the EEO manager, she was called into increasingly more meetings to discuss her work performance and to receive counseling. A few days after the plaintiff filed an internal EEO complaint

asserting race discrimination, she received a six-month performance evaluation that was lowered because of her EEO complaint.  The plaintiff's third-level supervisor presented the evaluation, openly discussed her EEO complaint, and made disparaging remarks about racism and the workplace.  A few weeks later, the plaintiff's first-level supervisor openly reprimanded her for returning late from a benefits fair, while white employees who were also late were not reprimanded.  Around this time, the plaintiff sought medical attention to address health issues arising from stress at work.  The day after her internal EEO complaint was resolved with no finding of race discrimination, the plaintiff resigned.  The amended complaint asserts three causes of action, all under Title VII:  (1) race discrimination; (2) hostile work environment; and (3) retaliation.

The defendant argues that the amended complaint fails to state a claim on which relief can be granted and seeks dismissal with prejudice under Rule 12(b)(6).  With respect to the race discrimination claim, the defendant argues that the amended complaint fails to allege an adverse employment action other than constructive discharge and that it fails to allege facts supporting the allegation that she was constructively discharged.  (Doc. 19 at 2-8).  With respect to the retaliation claim, the defendant argues that the amended complaint fails to allege an adverse action meeting the standard articulated in *Burlington Northern and Santa Fe Railway v. White*, 548 U.S. 53 (2006).  (Doc. 19 at 8-10).  With respect to the hostile work environment claim, the defendant argues that the amended complaint fails to set forth facts plausibly alleging that the alleged harassment was sufficiently severe or pervasive to alter the terms and conditions of the plaintiff's employment.  (*Id*. at 10-12).  Should its motion to dismiss fail, the defendant argues the plaintiff should be required under Rule 12(e) to file a second amended complaint that, for each count, specifically identifies the precise preceding paragraphs relevant to that count.  (*Id*. at 12-13).

## DISCUSSION

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *accord Gennusa v. Canova*, 748 F.3d 1103, 1116 (11th Cir. 2014). The Court employs the same principle on motion to dismiss. *E.g., Jurich v. Compass Marine, Inc.*, 906 F. Supp. 2d 1225, 1228 (S.D. Ala. 2012). Accordingly, the Court will consider only those arguments the parties have expressly advanced and will not supply legal or analytical support the parties have declined to offer themselves.

## I. Motion to Dismiss.

To survive dismissal under Rule 12(b)(6), a complaint must first satisfy the pleading requirements of Rule 8(a)(2). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8(a)(2). Rule 8 establishes a regime of "notice pleading." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14 (2002). It does not, however, eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action. "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2). The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" to satisfy that rule. *Twombly*, 550 U.S. at 555. There must in addition be a pleading of facts. Though they need not

be detailed, "[f]actual allegations must be enough to raise a right to relief above the speculative level ...." *Id.* That is, the complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard … asks for more than a sheer possibility that the defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. (internal quotes omitted). A complaint lacking "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" will not "survive a motion to dismiss." *Id*. But so long as the plausibility standard is met, the complaint "may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotes omitted).

These are the pleading requirements of Rule 8(a)(2), and failure to meet them exposes a complaint to dismissal under Rule 12(b)(6) for failure to state a claim on which relief can be granted. But the complaint is so exposed only if the defendant moves for dismissal under that rule, invokes the plausibility standard, and makes a satisfactory showing that, in certain, specified respects, for certain, specified reasons, the complaint falls short of that standard.[1] "Vague, generalized assertions that a claim is somehow implausible, without a clear, supported explanation of just what is implausible and why, places no burden on the Court to supply the deficiency or on the plaintiff to respond." *FNB Bank v. Park National Corp.*, 2013 WL 1748796 at \*2 (S.D. Ala. 2013).

---

[1] This necessarily follows from the principle that the movant bears the burden of showing that dismissal for failure to state a claim is warranted. *E.g., Beck v. Deloitte & Touche*, 144 F.3d 732, 735-36 (11th Cir. 1998); *Continental Motors, Inc. v. Jewell Aircraft, Inc*., 882 F. Supp. 2d 1296, 1314 n.26 (S.D. Ala. 2012).

### A.  Race Discrimination.

"[A]dverse employment action is an indispensable element of a Title VII plaintiff's case …." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1246 (11th Cir. 2001).  Therefore, to survive a motion to dismiss under Rule 12(b)(6), the amended complaint must contain allegations reflecting the existence of one or more adverse employment actions.  The defendant denies that the amended complaint does so.

An adverse employment action "must impact the 'terms, conditions, or privileges' of the plaintiff's job in a real and demonstrable way." *Davis*, 245 F.3d at 1239 (quoting 42 U.S.C. § 2000e-2(a)).  Thus, "to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Id*. (emphasis in original).  "[T]he employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id*.

Other than constructive discharge, the adverse actions identified by the plaintiff in the amended complaint are as follows:  (1) carrying a heavier workload than her white counterpart; (2) having her time scrutinized more than that of white employees; (3) receiving an undeservedly low rating on her six-month evaluation; (4) being berated by doctors in front of others; (5) being called into meetings to discuss her work performance and receive counseling; (6) being openly reprimanded for returning late from a benefits fair; and (7) having her EEO complaint not upheld.

### 1.  Workload.

The defendant relies on an unpublished Fifth Circuit opinion for the proposition that "[i]mposing a higher workload than that given to other employees is not an adverse employment action under title VII." *Ellis v. Compass Group USA, Inc.*, 426 Fed. Appx. 292, 296 (5th Cir. 2011).  In the Fifth Circuit, however,

"[a]dverse employment actions include only ultimate employment actions, such as hiring, firing, promoting, compensating, or granting leave." *Id*. At least after *Davis*, the standard in the Eleventh Circuit extends beyond ultimate employment actions to any other action working a serious and material change in the plaintiff's terms and conditions of employment. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

The defendant equates a "workload" claim with a "work assignment claim." This may be correct, although it appears the latter term generally is employed when a plaintiff complains of being given menial, distasteful or otherwise unsatisfactory tasks rather than when she is given more work than her peers. In any event, the plaintiff's own authority states only that work assignment claims, "absent unusual circumstances, typically do not constitute adverse employment actions." *McCone v. Pitney Bowes, Inc.*, 582 Fed. Appx. 798, 800 (11th Cir. 2014); *accord Davis*, 245 F.3d at 1244 ("We do not suggest that a change in work assignments can never by itself give rise to a Title VII claim; in unusual instances the change may be so substantial and material that it does indeed alter the 'terms, conditions, or privileges' of employment."). The defendant has not attempted to show that being required to carry twice the workload of a white peer is not an unusual circumstance sufficient to render the plaintiff's workload/work assignment an adverse employment action.

### 2. Scrutiny.

"This court and others within this circuit have uniformly held that heightened scrutiny, without evidence that any disciplinary action was taken against [the plaintiff] or that he was subjected to any tangible consequence, does not constitute an adverse employment action." *Buford-Clark v. Birmingham Board of Education*, 2015 WL 225464 at *5 (N.D. Ala. 2015); *accord Perkins v. Kushla Water District*, 21 F. Supp. 3d 1250, 1262 (S.D. Ala. 2014); *Gossard v. JP Morgan Chase & Co.*, 612 F. Supp. 2d 1242, 1250 (S.D. Fla. 2009); *Little v.*

*Peach County School District*, 2009 WL 198003 at \*11 (M.D. Ga. 2009).  In

*Harbuck v. Teets*, 152 Fed. Appx. 846 (11th Cir. 2005), the plaintiff alleged a

number of adverse actions, including that she "has been subject to heightened

scrutiny since her deposition in her previous EEOC complaint."  *Id*. at 847.  The

Court, citing *Davis*, ruled that "[t]he actions about which Harbuck complains do

not constitute an adverse employment action …."  *Id*. at 848.  Because the

amended complaint does not allege that the plaintiff received any disciplinary

action or was subjected to any tangible consequence as a result of the scrutiny of

her time, it does not allege an adverse employment action and thus does not state a

claim of race discrimination based on heightened scrutiny.


### 3.  Evaluation.

"A lower score on [a plaintiff's] performance evaluation, by itself, is not

actionable under Title VII unless [the plaintiff] can establish that the lower score

led to a more tangible form of adverse action, such as ineligibility for promotional

opportunities."  *Brown v. Snow*, 440 F.3d 1259, 1265 (11th Cir. 2006) (citing

*Davis*).  Because the amended complaint does not allege that the plaintiff suffered

any consequence as a result of her evaluation, it does not allege an adverse

employment action and thus does not state a claim of race discrimination based on

her evaluation.


### 4.  Counseling, berating and reprimand.

A Title VII discrimination claim "rarely may be predicated merely on [an]

employer's allegedly unfounded criticism of an employee's job performance,

where that criticism has no tangible impact on the terms, conditions, or privileges

of employment."  *Davis*, 245 F.3d at 1242.[2]  Subsequent Eleventh Circuit cases

---

[2] What the amended complaint calls "berating" clearly was criticism of the
plaintiff's job performance, since she objects to being called "stupid" and "incompetent."
(Doc. 18 at 3).

have essentially transformed "rarely" into "never."  *See, e.g., Barnett v. Athens Regional Medical Center, Inc.*, 550 Fed. Appx. 711, 713 (11th Cir. 2013) ("We have held [in *Davis*] that memoranda of reprimand or counseling that amount to no more than a mere scolding, without any following disciplinary action, do not rise to the level of adverse employment actions sufficient to satisfy the requirements of Title VII.") (internal quotes omitted); *Wallace v. Georgia Department of Transportation*, 212 Fed. Appx. 799, 801 (11th Cir. 2006) ("Under the standard articulated in *Davis,* [there was no] adverse employment action [because] [t]he written reprimand did not lead to any tangible harm in the form of lost pay or benefits [and] there is no evidence that [the plaintiff] has been denied job promotions as a result of the written reprimand."); *Embry v. Callahan Eye Foundation Hospital*, 147 Fed. Appx. 819, 828-29 (11th Cir. 2005) (plaintiff "failed to cite evidence showing that this reprimand resulted in her suffering any tangible consequences in the form of loss of pay or benefits, and it, thus, was not an 'adverse employment action.'") (citing *Davis*).  Because the amended complaint does not allege that the plaintiff's reprimand, counseling or berating had any tangible impact on the terms, conditions or privileges of her employment, it does not allege an adverse employment action and thus does not state a claim of race discrimination based on these criticisms.

### 5.  EEO complaint.

The defendant does not address the defendant's denial of her EEO complaint and thus cannot receive dismissal of the race discrimination claim to the extent based on that denial.[3]

---

[3] The amended complaint alleges that the handling of her EEO complaint was "not impartial."  (Doc. 18 at 5).  Whether or not partial means racially discriminatory, the defendant's failure to address this incident leaves it in the mix.

### 6. Constructive discharge.

The defendant makes no argument that a constructive discharge is not an adverse employment action, and plainly it is.[4] Instead, the defendant argues that the allegations of the amended complaint, accepted as true, do not meet the standard of a constructive discharge. (Doc. 19 at 6-8).

"A constructive discharge occurs when a discriminatory employer imposes working conditions that are so intolerable that a reasonable person in [the employee's] position would have been compelled to resign." *Fitz v. Pugmire Lincoln-Mercury, Inc.*, 348 F.3d 974, 977 (11th Cir. 2003) (internal quotes omitted). The defendant assumes that the plaintiff, to show the intolerability of her working conditions, can rely on all the conduct on which she bases her race discrimination claim – including those items that do not rise to the level of an adverse employment action. (Doc. 25 at 3-4). Even "taken together," the defendant says, these circumstances "were not so severe that resignation was the only reasonable response." (*Id*. at 4 (internal quotes omitted)).

The defendant, however, offers no case reflecting that the slings and arrows allegedly endured by the plaintiff cannot, as a matter of law, support a constructive discharge. Most especially, the defendant has not accounted, by discussion or by citation to any appropriate authority, for the amended complaint's allegation that, for an extended period of time, the plaintiff was forced to perform twice the work

---

[4] A constructive discharge is tantamount to a discharge, and termination of employment is a quintessential adverse employment action. As this Court has stated, "[w]hile sometimes described as a 'claim,' a constructive discharge is actually only an adverse employment action and thus only an element of a claim." *Burden v. International Longshoremen's Association*, 510 F. Supp. 2d 618, 625 (S.D. Ala. 2007) (footnote omitted); *see also Akins v. Fulton County*, 420 F.3d 1293, 1300-01 (11th Cir. 2005) ("Constructive discharge negatively affects an employee's job status, and therefore constitutes an adverse employment action.") (First Amendment retaliation case citing as support a Title VII retaliation case); *Menzie v. Ann Taylor Retail Inc*., 549 Fed. Appx. 891, 894 (11th Cir. 2013) ("A constructive discharge qualifies as an adverse employment action.") (ADA discrimination case citing as support a Title VII retaliation case).

of her white peer.[5]  Absent such authority and/or discussion (which the Court declines to seek or provide on the defendant's behalf), it is far from obvious that doing the work of two people for a protracted period cannot, at some point, become so intolerable as to support a constructive discharge.[6]

### 7. Summary.

The defendant's motion to dismiss the plaintiff's race discrimination claim is due to be granted except to the extent the plaintiff bases her claim on disparate workload, rejection of her EEO complaint, and/or constructive discharge.

### B. Hostile Work Environment.

As noted, a complaint must address, directly or inferentially, each element of a claim.  One element of a hostile work environment claim is that the unwelcome harassment "was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010).  As this Court has recently noted, "[t]he Eleventh Circuit has, in several unpublished opinions, indicated that, to satisfy *Twombly* and *Iqbal*, a complaint must set forth facts plausibly suggesting that the hostile environment experienced by the plaintiff was

---

[5] Exactly how long is not clear, but at least five months.  The plaintiff alleges that the disparity continued "[d]uring the timeframe alleged in her complaint."  (Doc. 18 at 2). She could mean by this from early 2013 (when she was hired as a temporary employee), from January 2014 (when she was made a permanent hire), or from July 2014 (when the pleading begins listing "specific incidents" – although "discriminatory acts were already occurring" before then).  (*Id.*).  Since the plaintiff resigned in mid-December 2014, (*id.* at 5), the alleged duration of her double workload is at least five months but could be over 1½ years.

[6] The defendant notes in passing that the amended complaint does not expressly allege that the plaintiff's working conditions were so unbearable that she no choice but to resign.  (Doc. 19 at 7).  But the defendant neither asserts that this is a fatal pleading defect nor cites any authority that would support such an assertion.  Again, the Court follows its practice of addressing only arguments actually asserted – and supported – by the parties.

sufficiently severe and/or pervasive to satisfy the fourth element." *Grissett v. H.J. Baker Brothers*, 2015 WL 5734452 at *2 (S.D. Ala. 2015).  The defendant denies that the amended complaint does so.

"Determining whether the harassment was sufficiently severe or pervasive involves both an objective and a subjective component.  …  In determining the objective element, a court looks to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (internal quotes omitted).  "Any relevant factor must be taken into account, but no single factor is dispositive." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1299 (11th Cir. 2012).

The defendant argues that the plaintiff's double workload was not severe or pervasive, (Doc. 25 at 7), but the only case it cites is a trial court opinion that (construed generously in favor of the defendant) involved a plaintiff required to perform her job while a co-employee was permitted to loaf, not a plaintiff required to perform the work of two employees.  Nor does the defendant's authority offer anything beyond a raw conclusion that the claim was inadequately pleaded.

Without addressing any specific underlying conduct, the defendant argues generally that the amended complaint does not plausibly allege that the conduct was frequent, threatening or humiliating or that it interfered with the plaintiff's job performance.  (Doc. 19 at 12).  But it is hard to see how being required to perform twice the work of a white peer every day for months could be considered anything other than frequent, and it is equally hard to see how doing the work of two for months on end does not plausibly suggest a resulting negative impact on job performance.  Reasonable contrary arguments may exist, but the Court will not conjure them on its own.

Finally, the defendant asserts an absence of non-conclusory facts suggesting that any hostile work environment was based on race.  (Doc. 19 at 12).

The amended complaint, however, expressly alleges that the plaintiff's workload "was double that of her white female counterpart," (Doc. 18 at 2), which clearly implicates a racial motivation.

Because the defendant has failed to show that the plaintiff's double workload cannot on its own support her hostile work environment claim, the Court need not address the other incidents on which the plaintiff relies in support of this claim. Based on the plaintiff's double workload, the defendant's motion to dismiss is due to be denied.

### C.  Retaliation.

Because a defendant's retaliatory conduct must be caused by a plaintiff's protected activity, only conduct occurring after the plaintiff's opposition to an unlawful employment practice can support a retaliation claim. The plaintiff's first potentially protected activity occurred in July 2014, when she reported to the EEO manager the first two instances of being openly berated by a physician. (Doc. 18 at 3). Subsequent conduct directed against the plaintiff, as alleged in the amended complaint, includes: being berated two more times; repeatedly receiving counseling about her work performance; receiving an unflattering six-month evaluation; receiving a reprimand for returning late from a benefits fair; and having her EEO complaint not upheld.

The only one of these incidents that the amended complaint expressly labels as retaliatory is her evaluation. (Doc. 18 at 4). The counseling and reprimand, along with the rejection of the EEO complaint, can also be considered as part of the retaliation claim because the amended complaint does not suggest otherwise.[7] But the berating cannot be so considered, because the amended

---

[7] The defendant proposes that the amended complaint negates a retaliatory motive for the reprimand because it identifies the reason given by the employer for the reprimand. (Doc. 19 at 9-10). This is a *non sequitur*; noting the employer's articulated reason is not a concession that it is the true reason. The amended complaint denies the plaintiff was in fact late (since no deadline had been given) but, even if she was late, the

complaint expressly alleges these incidents occurred "solely based on [the plaintiff's] race." (*Id*. at 3).

Retaliation claims under Title VII no longer require an "adverse employment action" as defined in *Davis* and like cases. "[T]he anti-retaliation provision, unlike the substantive provision, is not limited to ... actions that affect the terms and conditions of employment." *Burlington Northern and Santa Fe Railway v. White*, 548 U.S. 53, 64 (2006). Instead, the test is whether "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 68 (internal quotes omitted). While "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence," *id*. at 68, *Burlington Northern* "strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions." *Crawford*, 529 F.3d at 973 n.13. The defendant argues that the amended complaint does not plausibly allege that the evaluation or reprimand were sufficiently adverse to dissuade a reasonable worker from engaging in protected activity. (Doc. 19 at 9).

In support of its argument, the defendant relies primarily on a lower court opinion that erroneously utilized the "adverse employment action" standard applicable to discrimination cases (and that expressly relied on *Davis*). The only other authority the defendant cites is an unpublished Eleventh Circuit opinion that, while it acknowledged *Burlington Northern* and *Crawford*, mistakenly required the plaintiff to show something like "a decrease in salary," despite *Burlington Northern*'s holding that a materially adverse action for retaliation purposes need

---

amended complaint asserts that white employees that were also late (and only black employees had filed EEO complaints) received no reprimand. (Doc. 18 at 4, 5).

not affect the terms and conditions of employment.[8]  The defendant distills its argument as being that the retaliation claim must fail because the plaintiff "did not allege any reduction in salary or any change in the terms, conditions, or benefits of employment" due to her allegedly protected activity.  (Doc. 25 at 4).  Because the defendant has neither articulated the correct standard nor relied on cases applying the correct standard, it has failed to demonstrate that the amended complaint fails to state a claim of retaliation.

The defendant notes its uncertainty whether the amended complaint alleges that the plaintiff's asserted constructive discharge was retaliatory.  The Court believes that it does.  (Doc. 18 at 1).  In any event, the defendant says, any such claim is not actionable because the allegedly retaliatory conduct as a matter of law did not render the plaintiff's working conditions so intolerable that a reasonable person would have been compelled to resign.  (Doc. 19 at 10 n.5).  The Court agrees.  *See Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1201 (11th Cir. 2001) ("Repeatedly receiving poor evaluations would be unpleasant for anyone, but it does not rise to the level of such intolerable conditions that no reasonable person would remain on the job."); *Hill v. Winn-Dixie Stores, Inc.*, 934 F.2d 1518, 1527 (11th Cir. 1991) (formal reprimand and informal criticism "did not create intolerable working conditions that would compel a reasonable person to resign") (Jury System Improvements Act case).

## II.  Motion for More Definite Statement.

The defendant objects that the amended complaint is an impermissible "shotgun pleading" because each count incorporates all preceding paragraphs and because it is "replete" with facts not obviously connected to any particular cause

---

[8] "Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants."  *Bonilla v. Baker Concrete Construction, Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007).  For reasons discussed in text, the Court does not find the defendant's unpublished authority persuasive.

of action.  As a result, the defendant says it has difficulty perceiving how the plaintiff contends the defendant wronged her.  As a remedy, the defendant asks the Court to order the plaintiff to file a second amended complaint to "identify which facts support which cause of action."  Without this relief, the defendant says it cannot "adequately identify and respond to her claims."  (Doc. 19 at 13).

Shotgun pleadings are certainly a bane of modern federal practice, but labels alone do not entitle a defendant to relief under Rule 12(e).  That rule is triggered only when the complaint "is so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).  The amended complaint consists of 20 numbered paragraphs, only six of which address the conduct of which the plaintiff complains.  Even before the instant ruling on the motion to dismiss, the amended complaint was sufficiently short and clear to permit the defendant to prepare an appropriate response.  To the extent that any residual ambiguity remains as to what conduct is challenged under which claims, the defendant can eliminate it through discovery.

## CONCLUSION

For the reasons set forth above, the motion to dismiss the plaintiff's race discrimination claim is **granted** to the extent the claim is based on scrutiny of the plaintiff's time, negative evaluation, counseling, berating or reprimand, and is otherwise **denied**; the motion to dismiss the plaintiff's hostile work environment claim is **denied**; and the motion to dismiss the plaintiff's retaliation claim is **granted** as to retaliatory constructive discharge and is otherwise **denied**.  The motion for more definite statement is **denied**.

DONE and ORDERED this 3rd day of August, 2016.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

15